State of Minnesota ex rel. v. Grace.

STATE OF MINNESOTA *ex rel.* ELLA HOWARD and LIZZIE COOK

*vs.*

JOHN GRACE, Sheriff, &c.

Where one accused of a felony has been held by the examining magistrate to answer in the district court, a prosecution for felony is pending in said court within the meaning of ch. 71, Laws of 1868.

When an alleged material witness for the state in such prosecution has been brought before the district court or judge upon an order based upon affidavit as provided in said act, the said statute intends that if, in the judgment of the court or judge, upon evidence to be adduced at the hearing, and in the exercise of a sound legal discretion, said witness is a material witness for the state and intends to leave the state and will not return or be present at the trial, so that his testimony will be lost to the state, or will otherwise evade his obligation as a citizen to appear and testify, it may require such person to enter into recognizance with or without surety as it may direct, for his attendance at the trial of said prosecution, and in default thereof commit him as specified in said act. Said act is not repugnant to the constitution of this state, or the 14th amendment to the constitution of the U. S.

The relators were arrested and brought before the district court, under said act, upon its order issued in a pending prosecution for felony, upon the affidavit and motion of the county attorney therein; and thereupon the only inquiry made was as to their ability to give bail, and they were committed, upon its decision that they were unable so to do, till the trial of such prosecution, or until they should be discharged according to law. *Held,* that such commitment was not warranted by said act.

It is unjust and oppressive, and against common law and common right, to commit a witness to jail who is unable to give bail, without proof of any intention on his part not to appear and testify.

Refuse or neglect, as used in said statute held equivalent to failure to comply, with the order of the court.

State of Minnesota ex rel. v. Grace.

The relators were arrested and brought before the district court for Ramsey county under the provisions of an act entitled "An act to compel attendance of witnesses in certain cases," (*Laws* 1868, *ch.* 71,) and were required to enter into recognizance, with sureties, for their appearance as witnesses in a certain criminal prosecution instituted against one Mary Monti, who had been arrested and examined before the city justice of St. Paul, and upon examination held for trial at the district court, and were committed to the jail of Ramsey county, though upon examination by the court they stated that they were unable to procure sureties, and offered to enter their own several recognizances. They made application to the supreme court for a writ of habeas corpus, which was granted, and the writ issued, to which return was duly made.

The points presented by the application and the return, are sufficiently stated in the opinion.

Masterson & Simons, for Relators.

F. R. E. Cornell, Attorney General.

*By the Court.*—Ripley, Ch. J.—The proceedings upon which these relators were committed were taken under *ch.* 71 *of the Laws of* 1868. The petition for this writ of habeas corpus states, that Mary Monti had been arrested and brought before the police justice of St. Paul, charged with manslaughter in the 2d degree, and upon examination was held to answer the same at the next May term of the district court for Ramsey county. If this were so, and the return contains nothing to the contrary, we think that a prosecution for felony was pending in the said district court, within the said statute, although, as is also alleged in the petition and not controverted, no return had been made by said justice of the examinations and

recognizances taken by him, and which, indeed, he was not bound to return till the first day of said term. *Gen. Stat. ch.* 106, *sec.* 24.

A prosecution is pending, in the sense in which our statutes use the words, from the commencement of proceedings before a magistrate against a person charged with a public offense under *Gen. St. ch.* 106; and where such person has been held to answer in the district court the prosecution is thenceforward pending in that court.

By *Gen. Stat. ch.* 92, *sec.* 7, when a person is held to answer for a public offense, if an indictment is not found against him at the next term of the court at which he is held to answer, the court shall order " the *prosecution* " to be dismissed, unless good cause to the contrary is shown.

Unless there were *a prosecution pending in the district court*, there would be no occasion for its *dismissal* thence. *Sec.* 8 provides, that if a defendant indicted for a public offense, whose trial has not been postponed upon his application, is not brought to trial at the next term of the court in which the indictment is triable after it is found, the court shall order the indictment dismissed, unless good cause be shown to the contrary; but by *sec.* 9, if he be not *indicted, or tried,* as provided in *secs.* 7 *and* 8, and sufficient reason is shown therefor, the court may order the " *action* " to be continued from term to term; and by *sec.* 10, if the " action " is dismissed the defendant shall be discharged. That is to say, the law considers that an action is pending in the district court before indictment found; and in this action the indictment is styled the first pleading on behalf of the state, (*Gen. Stat. ch.* 108, *sec.* 1,) just as the complaint is the first pleading on behalf of the plaintiff in a civil action.

We discover nothing in the phraseology of the particular law now before us to warrant the conclusion that it intends,

State of Minnesota ex rel. v. Grace.

in opposition to the General Statutes, that a prosecution is not pending in the district court till an indictment has been found.

Upon the facts before us, then, the case existed in which by said statute, if the county attorney made and filed his affidavit in said court setting forth that any person was a material witness on the part of the state in such prosecution, and that he had good reason to believe that such person would leave the state before the trial of such prosecution, and not return or be present at the time of such trial, the court might order such person to be brought before it, and if in its judgment the circumstances of the case, or the interests of the state warranted such proceeding, might require such person to enter into a recognizance, with or without surety, as it might direct; and if such person should refuse or neglect to comply with such order, might commit such person to the common jail till the trial be had, or such person be discharged according to law.

From the return to the writ it appears, that upon these relators being brought before the court in pursuance to its order therefor made upon the application of the county attorney and his affidavit made and filed as in the return set forth, the only fact inquired into was their ability to give bail, and that they were committed upon its decision that they were unable to give bail, although they offered to enter into their own recognizances for their attendance.

We agree with the relators' counsel that this is not a correct construction of the statute.    The affidavit authorizes the arrest of the alleged witness, and the bringing him before the court; but when he is before the court, it is to decide whether or not, in its judgment, the facts exist which will warrant it in requiring him to enter into a recognizance, either with or without sureties; that judgment, however, is to be exercised upon evidence to be adduced at the hearing.

It is also to be considered, we think, from the title of the

act; (an act to compel the attendance of witnesses in certain cases,) from its general scope and purposes, i. e. to supplement the General Statutes by securing the attendance of material witnesses whose testimony is in danger of being lost to the state, and who, for whatever reason, have not been bound over by the magistrate ; and from the established principles of law and practice, that this act intends that if in the opinion of the court, the witness is such material witness; that he intends to leave the state and not return or be present at the trial, so that his testimony will be lost to the state ; or that he will in any other manner evade his obligation as a citizen to appear and testify, the court may take security of him for his attendance, and in default thereof commit him.

In the words of Lord Ellenborough in *Bennett vs. Watson* (3 *Maule & Selwyn* 1,): "The law intends that the witness shall be forth-coming at all events," (as appears by its title,) " and it is a lenient mode which it provides to permit him to go at large upon his own recognizance. However this is only one mode of accomplishing the end, which is his due appearance." Requiring bail is but another alternative mode; and we may, moreover, say with him that when that mode, as well as the end are frustrated as far as it can be by the refusal of such a witness, or, as in our law, by his refusal or neglect, whether because of unwillingness or inability, the commitment is the only means of securing that end. Refuse or neglect, as used in this act, mean, in our opinion, nothing more than " refuse," in the Gen. Statutes, (*Gen. St. ch.* 106, *sec.* 22,) both expressions being used in their ordinary technical sense as equivalent to *failure to comply* with the order.

We think that this view is strengthened by the circumstance, that if one who is required to give his own recognizance merely, refuse or neglect so to do, he is equally to be committed with one who being also required to find sureties, refuses or neglects

State of Minnesota ex rel. v. Grace.

to furnish them.    The same language is applied to both, though
the first must, in point of fact be able, while the second may
be or may not be actually unable to do what is required of
him.    Such too appears to have been the practical construc-
tion put upon the same words in the statute of the U. S. upon
the same subject.    *Act Aug.* 8, 1846, *secs.* 1, 7. (9  *U. S. Statutes
at Large*, 73 ;)  *U. S. vs. Lloyd*, 4 *Blatchford*, 427.

In construing the law now before us we do not overlook the
fact that, literally taken, its language is tantamount to leaving
it to the discretion of the judge, whether or not to bind the
witness over.    This, indeed, is expressly so in the U. S. stat-
ute above referred to, provided it be first satisfactorily proved
that the witness is material and necessary ; whereas, if our
statute be taken literally, the judge might require security, if,
for instance, he thought the interest of the state required it,
whether or not there were any proof before him that the wit-
ness was material, or that his evidence was in danger of being
lost.    But though the witness may be required to recognize
in the discretion of the court, the discretion ( or judgment )
here spoken of must, as in all other like cases, be intended to
be a sound legal discretion.    The judgment of the court
cannot be capriciously exercised.    It cannot legally abuse its
discretion, nor, indeed, is it to be presumed that it will.    If
for instance, it would be unjust or oppressive, and against
common law and common right, as it certainly would be,
( *Evans vs. Ries*, 12 *Ad. and El.* 55 ; 1 *Greenl. Ev.* 313 ; 1
*Burns Just. 24th Ed.* 1013 ; 1 *Archbold*, 48,) to commit such
material witness in default of bail, without any proof that he
had any intention of not appearing and testifying when duly
subpœnaed, but who is too poor to render his recognizance
of any value, or too friendless to be able to give bail, in what
sense could it be said, that in the exercise of a sound legal
discretion, the court would be warranted in so doing ; or what

interest of the state requires the incarceration of such a person ? Certainly none.

In the case above cited from 4 *Blachford*, Judge Betts, in the exercise of the discretion reposed in him by the act, discharged a witness on his own recognizance, he not being able to give bail, and the United States furnishing no proof of any design on his part not to attend and give evidence, although he resided out of the district. Other illustrations will readily suggest themselves.

The phraseology of the act is, indeed, in this particular, ill chosen to express the meaning which we are persuaded it was meant to convey, and might advantageously be amended in this direction, but such as it is, the construction which we have put upon it does not seem to us to be forced, while it is in harmony with established principles of law.

Since the commitment was not warranted by the act, it is, of course, unnecessary to consider whether or not it is constitutional or warranted by the 14th amendment to the constitution of the United States to commit a witness simply because he is unable to find security for his attendance. As at present advised, however, we have no hesitation in expressing our opinion that this act, as we have herein construed it, conflicts neither with our constitution or the 14th amendment aforesaid.

Relators are discharged.